O'MEARA, RESPONDENT, *v.* McDERMOTT, APPELLANT.

(No. 2,958.)

(Submitted April 4, 1911.  Decided April 17, 1911.)

[115 Pac. 912.]

*Negotiable Instruments—Acceptance—Jury Question—Election of Remedies — Mistake — Effect—Trial—Attorneys—Misconduct—Argument—Discretion.*

Judgment—Construction—*Res Judicata.*
   1.  In an action on a note and for services, a judgment construed, and *held* to show that the sole question decided was that an alleged agreement of partnership was never entered into between the parties, and that

hence plaintiff was not estopped to claim that the note was given for services.

Bills and Notes—Acceptance of Note—Jury Questions.
2. Whether the payee of a note refused to accept the same when offered to him, *held*, under the evidence, for the jury.

Election of Remedies—Mistake.
3. Where plaintiff first brought his action for an accounting, alleging that he was a partner of defendant, and as evidence that some amount was due him pleaded and produced a certain note, but the court found that no partnership existed, and that the note was given as evidence of an indebtedness arising out of a contract of employment, defendant could not thereafter urge that plaintiff could not try the question whether anything was due under the contract of employment.

Same—Mistake as to Remedy.
4. One who prosecutes a suit based on a remedial right which he erroneously supposes he has, and is defeated because of the error, has not made a conclusive election, and is not precluded from prosecuting an action based on an inconsistent remedial right.

Trial—Argument—Misconduct of Counsel—Discretion.
5. The matter of allowing counsel, during the argument of a cause, to use language deemed objectionable by appellant, is one controlled by a wise legal discretion of the court; in the absence of a showing of prejudice, a new trial on the ground of misconduct of counsel in that respect will not be granted.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by John H. O'Meara against Peter T. McDermott. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

*Messrs. Walsh & Nolan,* and *Mr. Jesse B. Roote,* for Appellant, submitted a brief. *Mr. C. B. Nolan* argued the cause orally.

No suitor is allowed to invoke the aid of the courts upon contradictory principles of redress upon one and the same line of facts. As soon as the choice of remedies is made and one of the alternative remedies proffered by the law adopted, his act at once operates as a bar as regards the other, and the bar is final and absolute. It may be stated as the correct rule that, subject to certain exceptions which are not involved in the present case, the first pronounced act of election is final and imperative. It is certainly the established law, in every state that has spoken on the subject, that the definite adoption of one of two or more inconsistent remedies, by a party cognizant of

the material facts, is a conclusive and irrevocable bar to his resort to the alternative remedy. (*Towns* v. *Alford,* 2 Ala. 378; *Bryan-Brown Shoe Co.* v. *Block,* 52 Ark. 458, 12 S. W. 1073; *Rucker* v. *Hall,* 105 Cal. 425, 38 Pac. 962; *Lamar* v. *Pearre,* 90 Ga. 377, 17 S. E. 92; *Herrington* v. *Hubbard,* 2 Ill. 569, 33 Am. Dec. 426; *Kepler* v. *Jessup,* 11 Ind. App. 241, 37 N. E. 655; *Bradley* v. *Brigham,* 149 Mass. 141, 21 N. E. 301, 3 L. R. A. 507; *Rowley* v. *Towsley,* 53 Mich. 329, 19 N. W. 20; *Sacker* v. *Marcus,* 43 Misc. Rep. 8, 86 N. Y. Supp. 83; *Long* v. *Long,* 111 Mo. 12, 19 S. W. 537; *Johnson-Brinkman Com. Co.* v. *Missouri Pac. Ry. Co.,* 52 Mo. App. 407; *Rice* v. *King,* 7 Johns. 20; *Morris* v. *Rexford,* 18 N. Y. 552; *Beloit Bank* v. *Beale,* 34 N. Y. 473; *Welch* v. *Seligman,* 72 Hun, 138, 25 N. Y. Supp. 363; *Colvin* v. *Shaw,* 79 Hun, 56, 29 N. Y. Supp. 644; *Lera* v. *Freiberg* (Tex. Civ. App.), 22 S. W. 236; *Bauman* v. *Jaffray,* 6 Tex. Civ. App. 489, 26 S. W. 260; *Warren* v. *Landry,* 74 Wis. 144, 42 N. W. 247; *Pine Lake Iron Co.* v. *Lafayette Car Works,* 53 Fed. 853; *Robb* v. *Vos,* 155 U. S. 13, 15 Sup. Ct. 4, 39 L. Ed. 52.) It is a well-settled rule that a party cannot, by varying the form of action, or adopting a different method of presenting his case, escape the operation of the principle that one and the same cause of action shall not be twice litigated between the same parties or their privies. (Black on Judgments, 2d ed., sec. 729; *Hardin* v. *Palmeree,* 28 Minn. 450, 10 N. W. 773.)

In behalf of Respondent, there was a brief by *Messrs. Maury & Templeman,* and *Mr. Matthew F. Canning. Mr. H. L. Maury* and *Mr. Canning* argued the cause orally.

On the general question of estoppel by election and estoppel by judgment, there is a valuable note found under *Hudson* v. *Remington Paper Co.,* 6 Am. & Eng. Ann. Cas. 103. The point decided in this case is very salient to the issue: "Where the entry of judgment in an action involving several issues of fact recites a finding upon one of such issues that compels a judgment for the defendant, and is silent as to the rest, there is no presumption that they have been passed on, and in the

absence of some further showing that will be held open to inquiry in the future litigation between the same parties based upon a different cause of action.''

An adverse decree in a suit for a share of the profits of partnership business as compensation for services rendered to a firm is not a bar to an action upon a *quantum meruit* for the value of such services. (*Kirkpatrick* v. *McElroy*, 41 N. J. Eq. 539, 7 Atl. 647.) A judgment dismissing an action for an accounting between copartners on a finding that no partnership existed is not a bar to an action for the services. (*Marsh* v. *Masterton*, 101 N. Y. 401, 5 N. E. 59.) A judgment is not available as an estoppel unless the particular controversy was necessarily tried and determined. The adoption of the wrong form of action does not operate as an estoppel. (*Bigley* v. *Jones*, 114 Pa. 510, 7 Atl. 54; *Elgin Nat. Watch Co.* v. *Meyer*, 29 Fed. 225.) A judgment in a proceeding for an accounting between plaintiff and defendant as partners, in which proceeding plaintiff set up a claim for services rendered the partnership, cannot, as a matter of law, be held to bar a subsequent action for services, against defendant individually, where there is some evidence that the services sued for were not embraced in the claim set up in the former proceeding. (*Kaster* v. *Welsh*, 157 Pa. 590, 27 Atl. 668.) On the general question as to whether a subsequently accruing cause of action can be held barred by prior adjudication, see the case of *Wagner* v. *Wagner*, 104 Cal. 293, 37 Pac. 935. Where a plaintiff declares on an account stated, and offers certain promissory notes as evidence to prove the fact of an accounting, but the evidence is rejected and judgment given against the plaintiff, this will not bar a future action by him on the notes. (Black on Judgments, par. 617.)

We call to the attention of the court a very careful opinion written by Judge Cooley: *Fifield* v. *Edwards*, 39 Mich. 264. The general tenor of which is: Estoppel from asserting a claim, excluded from a former suit, cannot apply where it was not within the issue in that suit, and there was no opportunity to establish it.

Where the money sued on in the second suit had not fallen due when the first suit was commenced, there can be no bar by reason of an adverse· judgment in the first suit. (*Hallack* v. *Gagnon,* 4 Colo. App. 360, 36 Pac. 70; *Schmidt* v. *Louisville etc. R. Co.,* 27 Ky. Law Rep. 21, 84 S. W. 314; *Overton* v. *Gervais,* 6 Mart., N. S., 685; *Ahl* v. *Ahl,* 60 Md. 207; *Raymond* v. *White,* 120 Mich. 165, 78 N. W. 1071; *Doescher* v. *Spratt,* 61 Minn. 326, 63 N. W. 736; *Ramsey County Bldg. Soc.* v. *Lawton,* 49 Minn. 362, 51 N. W. 1163; *Armfield* v. *Nash,* 31 Miss. 361; *Burnside* v. *Wand,* 108 Mo. App. 539, 84 S. W. 995; *Jones* v. *Silver,* 97 Mo. App. 231, 70 S. W. 1109; *West* v. *Moser,* 49 Mo. App. 201; *Priest* v. *Deaver,* 22 Mo. App. 276; *Wheeler* v. *Bancroft,* 18 N. H. 537.)

MR. JUSTICE SMITH delivered the opinion of the court.

After this case was remanded for a new trial (see *O'Meara* v. *McDermott,* 40 Mont. 38, 104 Pac. 1049), the defendant amended his answer by pleading a former adjudication, predicated upon the judgment entered in favor of the defendants in the action brought by O'Meara and Kerrigan against McDermott and wife for an accounting of the profits resulting from the sale of the mining claims mentioned in the former opinion of this court, as alleged partners of McDermott. The amended answer also contains the allegation that by the commencement and prosecution of the so-called partnership action for an accounting, O'Meara elected to rely on his claim that he was a partner and to pursue such remedies as were open to him for the enforcement of that claim, and that, by reason of so electing, he is now estopped from prosecuting this action. The second trial resulted in another verdict against the defendant in the sum of $12,000. Judgment was entered accordingly, and appeals were taken from the judgment, and from an order denying a new trial.

1. Appellant's contention that the judgment in the former action is a bar to the prosecution of this cause is untenable. The judgment and findings of fact made by the court disclose that

the sole question decided was that the alleged agreement of partnership was never entered into between the parties. The court filed a "decision" wherein the findings of fact are made. We shall treat this "decision" as findings of fact, which doubtless it was intended to be. Therein the court speaks of the circumstance that a note for $12,000 was given, and says he is "persuaded this was done with O'Meara's and Kerrigan's full knowledge and consent as settlement for whatever services and information they gave McDermott in the sale of the claims." This language negatives the idea that the court decided that O'Meara had no claim of any kind against McDermott. At the second trial the court told the jury that on the former trial it was determined "that there never was any agreement of partnership between the parties hereto in relation to such matter, and that plaintiff was not a partner with defendant in such enterprise." We think this language fairly and fully construes [1] the judgment, and that the court in submitting the issues to the jury at the second trial correctly held, in effect, that the plaintiff was not estopped by the first judgment.

2. The court also instructed the jury as follows: "In order to make a note or other written obligation binding upon the party signing the same, it must not only be delivered to the payee or obligee, or to someone for him, but it must be accepted by him; that is, he must receive it into his possession intending to hold and enforce it against the payor or obligor pursuant to some precedent agreement in accordance with which it is delivered. If, accordingly, you find that the plaintiff on receiving from the defendant the instrument sued on, and acquainting himself with its contents, declined to accept it, and offered to return it to the defendant, and did not thereafter, and prior to bringing suit upon it, in some way signify to the defendant his acceptance of it pursuant to the agreement in accordance with which it was given to him, he cannot recover on it, and your verdict must be for the defendant." It is now asserted in appellant's brief that "the evidence clearly shows that the plaintiff abandoned the instrument in writing sued on in this action." At the second trial the stenographers who reported the

testimony at the first trial were placed upon the stand, and they testified as to certain alleged statements made by the plaintiff during the course of his examination. The substance of the testimony was that O'Meara then testified that he offered to return the note, but McDermott refused to take it back. O'Meara denied that he so testified, and said, among other things: "I didn't offer it to him, to have him take it back. I didn't hand it back to him either. I know positively that I never tried to force the note back on him. I know that particularly, because I never offered it to him." O'Meara gave other testimony which tends greatly to lessen the effect of that just [2] quoted, but in all the circumstances of the case we think the court properly submitted the question to the jury for decision.

3. It is contended that in electing to bring an action for an accounting as an alleged partner O'Meara estopped himself from afterward asserting that the note was given in payment for services rendered in any other capacity; and incidentally the [3] claim is made that he abandoned and repudiated the note and violated the agreement under which it was given, when he elected to sue as a partner. The first contention is thought to be established as a matter of law from an inspection of the record, and the second is deemed to be disclosed by the testimony as a fact; complaint being made in this connection that the court below refused to give certain instructions to the jury on that subject.

In the case of *Thompson* v. *Howard*, 31 Mich. 309, the court said: "A man may not take contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or the means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again." In that case the plaintiff's son was enticed away by a neighbor, and the father brought suit for the value of his services on the basis of an implied contract. The jury disagreed, and he thereupon

discontinued that suit and began an action in tort for enticing the boy away. The court held that the latter action could not be maintained, for the reason that in bringing the first suit the father had impliedly admitted that the services were performed with his assent.

In *Warren* v. *Landry,* 74 Wis. 144, 42 N. W. 247, Mr. Chief Justice Cassoday said: "The rule is universal that where a party has a choice between two inconsistent remedies or causes of action, and he deliberately adopts the one, such election becomes conclusive upon him and precludes him from subsequently adopting the other." (See, also, *Rowley* v. *Towsley,* 53 Mich. 329, 19 N. W. 20; *Bradley* v. *Brigham,* 149 Mass. 141, 21 N. E. 301, 3 L. R. A. 507; *Lamar* v. *Pearre,* 90 Ga. 377, 17 S. E. 92; *Bryan-Brown Shoe Co.* v. *Block,* 52 Ark. 458, 12 S. W. 1073; *Bank of Beloit* v. *Beale,* 34 N. Y. 473; *Sanger* v. *Wood,* 3 Johns. Ch. (N. Y.) 416; *Morris* v. *Rexford,* 18 N. Y. 552; *Johnson-Brinkman C. Co.* v. *Missouri Pac. Ry. Co.,* 52 Mo. App. 407; *Nanson* v. *Jacob,* 93 Mo. 331, 3 Am. St. Rep. 531, 6 S. W. 246; *Long* v. *Long,* 111 Mo. 12, 19 S. W. 537; *Bauman* v. *Jaffray,* 6 Tex. Civ. App. 489, 26 S. W. 260; *Welch* v. *Seligman,* 72 Hun, 138, 25 N. Y. Supp. 363.) The foregoing cases are all more or less in point as illustrative of the rule above quoted from Michigan and Wisconsin, and are relied on by the appellant. It will be found on examination, however, that each decision is predicated upon a situation wherein the plaintiff had choice of remedies for the same act or omission of the defendant, as, for instance, where he ratified a fraudulent sale of his goods by bringing action for their value, or where he elected to sue in trespass rather than in *assumpsit,* and like cases.

The case principally relied on by the appellant, however, is *Sacker* v. *Marcus,* 43 Misc. Rep. 8, 86 N. Y. Supp. 83. In that case an action was brought to recover a sum of money for breach of a contract of employment and the wrongful discharge of plaintiff from the employ of the defendant. The answer, besides a general denial, contained an allegation that the plaintiff had begun another action, which was still pending upon the same contract, declaring that it was a contract of partnership,

and praying for an accounting. The court said: "It is to be observed from its language that this defense is not a plea of the pendency of another action for the same cause. The action at bar is for damages for breach of a contract for employment. The action referred to in this defense is an action in equity for the dissolution of a copartnership and an accounting. It is true that the plaintiff bases his two suits on the same contract, thus taking two views of the legal effect of that contract; but the views are absolutely inconsistent with each other. Both theories cannot be correct. It follows, therefore, that the plaintiff, having elected to bring his action on this contract in the supreme court on the theory that it created a partnership, elected and resorted to that remedy, and is bound by that election, and cannot afterward, and during the pendency of the former action, bring an action upon the theory that the same contract was one of employment." It will be noted that, after expressly stating that the defense was not a plea of another action pending for the same cause, the court says that the plaintiff may not prosecute the instant case during the pendency of the former action. We do not know what importance the learned judge who wrote the opinion attached to the fact that the action in equity was still pending. Certainly, if the decision is given the effect claimed for it by the appellant here, the result would be that even the dismissal of the former action would not place the plaintiff in a situation to prosecute the latter. That such is not the law in this state will presently be shown. The New York case is somewhat different from this in its facts also, as in that case the plaintiff was alleging at the same moment of time that the contract between himself and his opponent was one of employment and also of partnership.

The facts in this case are somewhat peculiar. In the action based upon an alleged partnership agreement, the complaint contained the following averment: "That he [McDermott] has refused to make any account, though he has acknowledged in writing and agreed to pay the plaintiff O'Meara the sum of $12,000, when the payments shall be made by Galiger & Clymo, but he has not agreed to pay Kerrigan anything." Either one

party or the other produced the note now in suit at the trial of action for an accounting, and O'Meara was examined with reference to the circumstances under which it was given. The court in its decision said: "Later McDermott gives a note for $12,000 to O'Meara, who is to give and does give his note for $2,000 to Kerrigan. I am persuaded by the evidence that this was done, and with O'Meara's and Kerrigan's full knowledge and consent as a settlement for whatever services and information they gave McDermott in the sale of the claims." In this case O'Meara testified: "I did not bring suit upon this note afterward, instead of bringing an action for partnership profits, because that note was not due at the time that suit was instituted." And again: "Q. Were you satisfied with it when you read it? A. No; not satisfied with the amount." McDermott testified: "When I delivered the note, I certainly intended to pay it, * * * if I got my commission out of the Burke & Balaklava deal. I am the one who first suggested raising it from $10,000 to $12,000." From the testimony of O'Meara above quoted and the excerpt from his complaint, it is at once apparent that he did not intend to abandon the note or rescind the contract therein expressed. On the contrary, it is clear that he considered the note as evidence of a subsisting indebtedness on the part of McDermott either growing out of a partnership arrangement or a contract of employment. In *Kyle* v. *Chester*, 42 Mont. 522, 113 Pac. 749, this court said: "Ordinarily, when the conduct of a person is such as to raise a clear presumption that he does not intend to do a certain thing, he will not thereafter be charged with such intention by implication." (See, also, *State Bank* v. *Forsyth*, 41 Mont. 249, 108 Pac. 914, 28 L. R. A., n. s., 501.)

The doctrine of election of remedies is conceived to be founded in the very just idea that a party ought not to be needlessly harassed with litigation. But a person who prosecutes an action or suit based upon a remedial right which he erroneously supposes he has, and is defeated because of the error, has not [4] made a conclusive election, and is not precluded from prosecuting an action or suit based upon an inconsistent reme-

dial right. (15 Cyc. 262.) In the case of *Sullivan* v. *Ross'
Estate,* 113 Mich. 311, 319, 71 N. W. 634, 76 N. W. 309, on
rehearing it is said: "If, in choosing his remedy, the plaintiff
has made a mistake, and for that reason failed, he is not cut
off from pursuing the right remedy."

The rule as to conclusiveness of election "is not inconsistent
with the practice of bringing a second and different action
where it appears that the plaintiff never had a right of action as
first brought, and therefore could not have elected. There is a
difference between an election of remedies and a mistake of
remedy, and the law has not gone so far as to deprive parties
of meritorious claims merely because of attempts to collect them
by inappropriate actions, upon which recovery could not be
had." (*McLaughlin* v. *Austin,* 104 Mich. 489, 62 N. W. 719.
See, also, *Agar* v. *Winslow,* 123 Cal. 587, 69 Am. St. Rep. 84,
56 Pac. 422.) And so in this case the plaintiff first brought
his action for an accounting, alleging that he was a partner of
the defendant. As evidence that some amount was due him, he
pleaded and produced the note now in suit. The court found
that no partnership existed, but that the note was given as evi-
dence of an indebtedness arising out of a contract of employ-
ment. Having prevailed in that case solely on account of the
fact that plaintiff mistook his remedy, the defendant is not now
in a position to urge that the plaintiff has no right to have
a competent court try the question whether anything is due
under the contract of employment.

This court, in *Kaufman* v. *Cooper,* 39 Mont. 146, 101 Pac. 969,
said: "There is a rule of law well established which is that
if a person prosecute an action based upon a remedial right
which he erroneously supposed he had, but which in fact he
did not have, and he is defeated because of his error, he will
not be held to have made an election of remedies, and will not
be precluded from asserting one which he has, even though it be
inconsistent with that which he supposed he had but did not
have. A review of the history of the first case (*Kaufman* v.
*Cooper,* 38 Mont. 6, 98 Pac. 504, 1135) convinces us that in
that instance Kaufman merely made a mistake as to the remedy

available to him, and it ought not to be said that by making such mistake the admitted indebtedness of Cooper and Archibald to him was thereby satisfied. The law does not recognize that method of discharging one's liabilities.''

We think the district court was correct in holding that O'Meara was not estopped as a matter of law.

4. But it is said that the court erred in refusing to charge the jury that if the note was given pursuant to an agreement between the parties, whereby they sought to adjust and settle any and all claims which O'Meara might have against McDermott, either as a partner or otherwise, and thus avoid litigation, and the plaintiff violated that agreement by beginning his action for an accounting, he could not recover on the note. We have carefully examined the evidence, and fail to find any testimony on the part of either O'Meara or McDermott that would have justified the court in giving these instructions. McDermott testified: ''I could see trouble was brewing. I said to him: 'I have never been in trouble before, and I don't want to have any. If you and Kerrigan will give me a written satisfaction in full of all demands, I will give you a note for $12,000.' The character of trouble that I was expecting to get into in view of these demands that they were making, and the kind of talk that they put up, was after I saw their attitude and language, and I thought that they would start a suit of some character, and it might prevent the company from completing their payments, and completing their contract, and so rather than have any trouble—as I told them at the time I never was in court—at the time I was willing to give this note for a written satisfaction. * * * I asked him then for a written satisfaction, and he said he would make it out and hand it to me. I subsequently had a talk with him about getting the written satisfaction.'' After the note was given he says he told O'Meara that he understood he was going to bring suit against him and Bishop Carroll, and O'Meara replied that he did not intend to bring suit. Again he testified: ''I never made any proposition except this, and this was given for full satisfaction. The proposition that I have told about the clause,

the matter had of the terms specified in this note to be given in exchange for the satisfaction, was the only proposition that I made him.'' It is to be observed that the testimony of the defendant is to this specific effect: that he stipulated for a written satisfaction of all claims against him; that plaintiff agreed to give it and afterward violated the agreement. Plaintiff, in effect, denied that any such agreement was made. The court fairly submitted to the jury the question whether there was such an agreement, and they found for the plaintiff. It may be that McDermott had in mind a desire to avoid litigation, or ''trouble,'' as he expressed it, and, if he did, he might well have stipulated that no suit growing out of previous transactions between himself and O'Meara should be commenced in case the note was given, but he claims no such agreement, and the general verdict against him determined that the note was given unconditionally.

Again, it is claimed that the motion for nonsuit should have been sustained on the ground that the respondent's testimony in chief disclosed the fact that such an understanding as we have been discussing was had between the parties and that he violated it; but, as heretofore stated, we do not think his testimony, confused and unsatisfactory as it is in many respects, will bear that construction, and appellant's version of the transaction specifically negatives the idea that such was the understanding of the parties.

5. Contention is made that the court erred in refusing to give the following instruction: ''(8) It was determined and adjudged in the action referred to that no agreement of partnership was ever entered into between the parties hereto in reference to the Burke and Balaklava claims, or in connection with the effort to procure a purchaser for the same, and that no sum was ever due from the defendant to the plaintiff upon any agreement of partnership in such enterprise. If you find accordingly that the note in suit had no consideration other than a part or the whole of what was supposed to be due to the plaintiff as a partner on the transaction referred to, it is wanting in any legal consideration and your verdict must be for the defendant.''

This instruction was properly refused. The court did charge the jury: "However firmly you may believe that the plaintiff is entitled to have something from the defendant either as a partner or for services, your verdict must be for the latter, unless you find that plaintiff is entitled to recover on the note." There never was any question that the note was given in payment for whatever services O'Meara had performed in connection with the sale of the Burke and Balaklava mining claims. He at first contended that he was a partner, and, in fact, he still so claims, notwithstanding the decision against him. But it is immaterial in this case how the relationship of the parties is characterized. Appellant will not be heard to say that the consideration for the note was services performed as a partner.

6. That payments were made on the Galiger & Clymo lease and option, substantially as agreed upon, is the law of the case. (See former opinion cited, *supra*.)

7. We find nothing in the affidavits on motion for a new trial which would warrant the court in reversing the judgment and order on account of misconduct of counsel during the argument [5] to the jury. The question of the propriety of applying epithets to litigants or opposing counsel is one which each attorney has the right to decide for himself, in accordance with his own ideas on the subject, and the facts in the case. The trial court will exercise a wise legal discretion in controlling such matters. We find no prejudicial error in that regard in this record.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied, May 20, 1911.