directors of the mortgagor, the trustee being a nominal defendant, and it was held that a purchaser of the bonds, with full knowledge of how the proceeds had been used, could not maintain an action for the breach of a covenant in the mortgage to devote the bonds or their proceeds to a particular use. The instrument of February 27, 1907, never became effective, and the parties to it, upon discovering that it was not in accordance with the subscription agreement, had the right to substitute a proper mortgage. Even if bonds had actually been issued pursuant to it, the said parties would at least have been entitled to the aid of a court of equity to reform it, unless the rights of bona fide purchasers upon the faith of it had intervened.

The plaintiff's rights must be determined, either by the subscription agreement or by the mortgage, under which the bonds were issued to and accepted by him. Under the subscription agreement the defendant assumed no duty or obligation to him, except to certify and deliver bonds when they were engraved and issued. His bonds were issued, and certified by the defendant, in literal compliance with the mortgage of June 4, 1907, and he accepted them with full knowledge that the railroad company was insolvent, that the work on the railroad had been abandoned, and that his money had been wasted. The defendant is under no legal or moral duty to reimburse him.

The interlocutory judgment should be reversed, with costs, and judgment directed upon the findings for the defendant dismissing the complaint, with costs. All concur.

---

KING et al. v. BEERS et al.

(Supreme Court, Appellate Division, First Department. June 2, 1911.)

1. JUDGMENT (§ 526*)—CONSTRUCTION.

   A judgment construed, and *held*, in view of the pleadings and the situation of the parties, not to refer to another judgment, but only to determine the order of priority as between certain claims.

   [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 969; Dec. Dig. § 526.*]

2. JUDGMENT (§§ 526, 951*)—CONSTRUCTION—ESTOPPEL—BURDEN OF PROOF.

   In determining to what extent a judgment operates as an estoppel, it is necessary to determine what issues were involved and decided in the action, and the burden of establishing the estoppel is on the person asserting it.

   [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 969, 1809; Dec. Dig. §§ 526, 951.*]

Appeal from Special Term, New York County.

Action by David James King and others against Herman M. Beers and the Fiss, Doerr & Carroll Horse Company, impleaded with others, to foreclose a mortgage. From an order confirming the report of a referee in surplus money proceedings, the company appeals. Reversed, with directions.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Martin Conboy, for appellant.
Edward S. Seidman, for respondent.

MILLER, J.   John B. Doerr owned the premises subject to the mortgage, the foreclosure of which resulted in the surplus money involved herein.   He died July 25, 1901, leaving a will, by which he divided all his property real and personal in equal shares among his wife, Mary A. Doerr, his daughter, May Estella Landis, and his son, William H. F. Doerr.   The one-third interest of the said son only is involved in this appeal, and the question relates to the priority of liens of three claimants, the appellant Fiss, Doerr & Carroll Horse Company, the respondent Henry M. Beers, and Eva Findlay, the mother-in-law of the said son.   The lien of the said appellant is based upon a judgment for $4,219.80 entered March 31, 1904, in a suit begun by attachment, notice of which was filed and indexed against the property on January 31, 1902.   The liens of the said respondent and of the said Findlay are based upon a judgment entered on April 17, 1906, in a suit in equity instituted by the said respondent against the said William H. F. Doerr, the appellant Fiss, Doerr & Carroll Horse Company, the executors of the said John B. Doerr, the said Eva Findlay, Mary A. Doerr, and May Estella Landis, and one Frederick Wagner.   The judgment was entered upon consent and upon findings agreed to by all of the parties.

[1] That judgment provided that the claim of the plaintiff, this respondent, is established "as a first lien (as of date May 10, 1902) upon the entire share or interest of William H. F. Doerr in the real and personal estate of the said John B. Doerr deceased, * * * ; and that the claim of defendant Eva Findlay is hereby established as above determined as a lien (as of date October 7, 1901), upon the entire share or interest of defendant William H. F. Doerr in the real and personal estate of John B. Doerr, deceased. * * * And that the defendant William H. F. Doerr shall have paid over to him whatsoever surplus there may be of his share or interest in the estate of John B. Doerr, deceased, after the payment in the order of priority above fixed of the claims of the plaintiff Herman M. Beers and of the defendant Eva Findlay."   Standing alone, those provisions would seem to have the effect, not only of subordinating the lien of the appellant's judgment to the claims of the respondent and the said Findlay, but also of destroying the lien of the appellant's judgment, even as against the judgment debtor himself.   The respondent relies upon that judgment as an adjudication, and invokes the doctrine that it is not subject to collateral attack.

[2] But in determining the extent to which a judgment operates as an estoppel it is necessary to determine what issues were involved and decided in the action, and the burden is on the person asserting the estoppel to establish it.   Rudd v. Cornell, 171 N. Y. 114, 63 N. E. 823.   Construction is not attack.

To determine the issues involved, we must look to the pleadings. It appears that the said John B. Doerr owned 312½ shares of the capital stock of the Fiss, Doerr & Carroll Horse Company, the appel-

lant. He provided in his will that his son should be allowed to purchase from the executors, at an appraised value to be determined by them, his interest in the copartnership business, then conducted by him jointly with William Fiss and John D. Carroll. Evidently the appellant was incorporated and succeeded to the business of the said copartnership after the will was made. The respondent, the plaintiff in said equity suit, alleged in his complaint therein that on May 10, 1902, the said William H. F. Doerr assigned to the plaintiffs' assignors 312½ shares of the capital stock of the appellant, as security for credit extended to him in the sum of $20,000; that said shares belonged to the said testator at the time of his death; that the executors of said testator had notice of said assignment; that without giving the plaintiff any notice or opportunity to take the same, as provided in said will and in violation of the terms of the will, they made a pretended sale thereof to the said Wagner at a grossly inadequate price, and that the said Wagner was really acting in behalf of two of the executors; that the said William H. F. Doerr procured the said Eva Findlay to bring a suit against him and the executors on an alleged assignment, purporting to have been made to her on October 7, 1901, but which was in fact really made long thereafter to hinder, delay, and defraud the plaintiff. His prayer for relief was that the assignment to him be established, and that he be decreed to have a first lien to the extent of $17,728.20 on the 312½ shares of the capital stock of the appellant herein and on all the interest devised and bequeathed to the said William H. F. Doerr by his said father; that said stock and interest in said estate be sold, and out of the proceeds thereof the plaintiff's claim thus established be paid; that the executors be required to account for said 312½ shares and for the entire interest of said William H. F. Doerr in said estate; that the alleged sale of the 312½ shares to the said Wagner be set aside, and that the pretended assignment to the said Findlay be adjudged fraudulent and void; that the entire estate of the said John B. Doerr be sold and distribution thereof made to the persons found entitled thereto. The only relief prayed for against this appellant was that it be enjoined and restrained from transferring the said 312½ shares of stock.

It will be observed that the complaint really tendered but three issues: (a) The validity and effect of the assignment of the 312½ shares to the plaintiff and of the plaintiff's claim, to secure which the assignment was made; (b) the validity of the sale to Wagner of the 312½ shares; (c) the validity of the assignment to Findlay. Of course, the plaintiff in that suit, this respondent, had no lien except perforce of his assignment of the 312½ shares of stock. He obviously undertook to assert (1) a right to the said shares of stock; (2) a right to be reimbursed out of the general estate in the hands of the executors, on the theory that they had wrongfully transferred said shares. As a mere general creditor he had no lien on the real estate, devised by the said John B. Doerr, whose will did not even give the executors power of sale. While he asked broadly that he be adjudged to have a lien on the interest of William H. F. Doerr in the estate both real and personal devised and bequeathed by his father,

it is obvious that he was not entitled to that relief, and such a demand in such an action did not call upon a defendant, having a lien on the said Doerr's interest in the real estate, to assert it.

The appellant answered, denying certain allegations of the complaint, and asked that it be dismissed. The said Findlay answered, setting up the assignment to her under date of October 7, 1901, and denied that it was made to hinder, delay, and defraud the plaintiff, but alleged that it was given to secure loans amounting to $50,000; that a judgment was obtained by her for that amount against the said William H. F. Doerr in the circuit court of Jackson county, state of Missouri, upon which judgment action was brought and judgment recovered in the Supreme Court of New York, county of New York, for the sum of $51,602.97. She prayed that the complaint be dismissed, and that she be adjudged to have an absolute conveyance of all the right, title, and interest of the said William H. F. Doerr in the estate of his father, and a prior lien to that of the plaintiff. No reference was made in any of the pleadings to the appellant's lien under its attachment and judgment.

We come now to the judgment, relied upon by the respondent. It first defined the interest of Mary A. Doerr, William H. F. Doerr, and May Estella Landis in the estate devised and bequeathed by John B. Doerr. It described six parcels of real estate devised by him, including the one from the sale of which the surplus money involved herein was derived. It then provided that this respondent was entitled to recover from William H. F. Doerr the sum of $17,728.20, with interest thereon from August 10, 1903, and that Eva Findlay was entitled to recover from William H. F. Doerr the sum of $51,602.97, with interest thereon from February 18, 1904. Then followed a clause beginning with a provision to the effect that the respondent and the said Findlay were entitled to have a trust impressed for their benefit upon the entire interest of the said William H. F. Doerr in the estate of his father and upon the proceeds thereof, and that each was to be paid his respective claim out of the interest of the said William H. F. Doerr "in the order of priority following, viz. * * *" Then follow the provisions in question, hereinbefore quoted.

It is patent that the findings and judgment had no reference whatever to the appellant's judgment. What was intended was a determination of the order of priority as between themselves of the respondent and the said Findlay. That was the only question at issue, so far as the priority of liens was concerned, and that was what the judgment established. They, the two claims involved, were to be paid in a certain order of priority, and, when it is said that the respondent's claim is established "as a first lien," the word "first" is used with reference to the thing with which that lien is compared; i. e., the lien of Findlay. The respondent's lien was established as of date May 10, 1902, nearly six months after the appellant's notice of attachment was filed. Surely nothing short of express language would suffice to subordinate a lien, the validity of which was not even in issue. The plaintiff in that suit obtained a judgment, in terms at least, establishing a lien upon the interest of the said William H. F. Doerr, upon the real estate as well

as upon the estate in the hands of executors. But by getting that to which he obviously was not entitled he did not secure a preference over a lien, the validity of which was not questioned, to which no issue raised by the pleadings related, which was nowhere referred to, and which plainly was not in the mind of any of the parties to the stipulation. That no one had it in mind is conclusively shown by the fact that the judgment provided that the said William H. F. Doerr was to have any surplus arising after the payment "in the order of priority above fixed" of the claims of the respondent and the said Findlay. If a trust could be impressed upon real estate, as was attempted to be done by that judgment, the trustee, whoever he was (the judgment failed to designate one), would have to take subject to the liens upon the real estate.

The appellant, in fact, had no interest in any issues raised by the pleadings. It was nominally a defendant because there was a dispute over the ownership of some of its capital stock. Being a party to the record, its attorneys signed the consent to the entry of the judgment, but, so far as it was concerned, that was a mere formality, and, even if its attorneys had the power to agree to the subordination of its lien to the claim involved in the suit, the judgment should not be construed as having that effect in the absence of express provisions requiring that construction. As no question of fact is in dispute, there is no occasion for sending the case back to the referee.

The order, in so far as appealed from, should be reversed, with $10 costs and disbursements, the exceptions to the referee's report should be sustained, and the final order should be modified, so as to provide for the payment of one-third of the surplus money, representing the interest of the said William H. F. Doerr to the appellant, Fiss, Doerr & Carroll Horse Company. All concur.

---

(71 Misc. Rep. 163.)

## In re KANE.

(Supreme Court, Special Term, Kings County.  March, 1911.)

1. ELECTIONS (§ 51*)—APPOINTMENT OF ELECTION COMMISSIONER—POWERS OF MAYOR.

The mayor of New York, in appointing a commissioner of elections, cannot be confined to a single person nominated under Election Law (Consol. Laws 1909, c. 17) § 194.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 51.*]

2. ELECTIONS (§ 47*)—COMMISSIONER OF ELECTIONS—CONSTITUTIONAL LAW.

Election Law (Consol. Laws 1909, c. 17) § 194, relating to the appointment of a commissioner of elections, which contemplates the nomination of a single candidate only and destroys the power of selection of the appointing power, is in violation of Const. art. 10, § 2, requiring all offices to be filled either by the electors or some public official or board.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 47.*]

3. ELECTIONS (§ 51*)—COMMISSIONER OF ELECTIONS—APPOINTMENT.

Where the Legislature has directed the nomination for the appointment of a commissioner of election, so that one person only is nominated, the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes